STEGENGA v DEPARTMENT OF TREASURY

Docket No. 110329. Submitted May 10, 1989, at Grand Rapids. Decided August 8, 1989.

Plaintiffs, Jack B. and Linda L. Stegenga, sold a bar and restaurant to Qualey-Reid, Inc. Plaintiffs retained and perfected a security interest in the furniture, fixtures, equipment, inventory, and accounts receivable but did not list the liquor license in the security agreement or financing statement since such was prohibited under the rules of the Liquor Control Commission. When Qualey-Reid neglected to pay state sales and withholding taxes, defendant, Michigan Department of Treasury, filed tax liens for the delinquent taxes. Qualey-Reid also defaulted upon its purchase agreement with plaintiffs and plaintiffs retook possession of the bar and restaurant. Plaintiffs agreed to resell to a third party and transfer the license, pending approval by the Liquor Control Commission. The defendant then announced its intention to seize the liquor license and enforce tax liens. Plaintiffs then brought an action in the Grand Traverse Circuit Court seeking an injunction to prevent defendant from seizing the license. The trial court, William R. Brown, J., issued an order which permanently enjoined defendant from seizing the liquor license. Defendant appealed.

The Court of Appeals *held:*

1. Defendant may not attach its tax lien to the liquor license involved here.

2. Regardless of the validity of the Liquor Control Commission's Rule 19, being 1979 AC, R 436.1119, which at the time relevant to this action prohibited plaintiffs from taking a security interest in the license, equity would not permit defendant to now argue that Rule 19 is invalid. Equity prohibits the government from, on the one hand, promulgating a rule and, on the other hand, denying the validity of that rule to the detriment of a person who complied with the rule. It makes no

REFERENCES

Am Jur 2d, Injunctions §§ 176, 194; Intoxicating Liquors §§ 177 *et seq.*; State and Local Taxation § 1122.

See the Index to Annotations under Injunctions; Intoxicating Liquors; Taverns and Tavernkeepers; Tax Liens.

difference that it may have been a different department, division, bureau, or commission which promulgated the rule.

3. Since the state prevented plaintiffs from taking a security interest in the liquor license, the state is now prevented from claiming a higher priority to the liquor license than plaintiffs.

4. Since it was improper for defendant to seek to seize the liquor license, and no tax lien could attach to the license, the issuance of an injunction was appropriate to prevent harm to plaintiff by defendant's unauthorized actions.

Affirmed.

1. Iɴᴛᴏxɪᴄᴀᴛɪɴɢ Lɪǫᴜᴏʀs — Lɪᴄᴇɴsᴇs — Tʀᴀɴsꜰᴇʀ ᴏꜰ Lɪᴄᴇɴsᴇs — Tᴀxᴀᴛɪᴏɴ.

A liquor licensee who sells his establishment and transfers his liquor license to the vendee may, as part of the transaction, enter into a contract with the purchaser for a reassignment of the liquor license to the vendor in the event of a default on the installment sales contract for the purchase; the state, in an attempt to enforce tax liens against the vendee, may not claim a higher priority to the license than the licensee where certain rules promulgated by the state prevented the licensee from retaining a security interest in the license (1979 AC, R 436.1119).

2. Eǫᴜɪᴛʏ — Esᴛᴏᴘᴘᴇʟ — Aᴅᴍɪɴɪsᴛʀᴀᴛɪᴠᴇ Lᴀᴡ — Rᴜʟᴇs.

Equity prohibits the government from, on the one hand, promulgating a rule and, on the other hand, denying the validity of that rule to the detriment of a person who complied with the rule.

3. Iɴᴊᴜɴᴄᴛɪᴏɴs — Tᴀxᴀᴛɪᴏɴ.

An injunction may be issued against the Department of Treasury, despite the statutory prohibition against the issuance of an injunction to stay proceedings for the assessment and collection of a tax, where the taxpayer alleges that the department's actions are not under or pursuant to the tax statute because there is no basis for the department's action; an injunction may be appropriate to prevent harm to the taxpayer resulting from the department's unauthorized actions (MCL 205.28; MSA 7.657[28]).

*Running, Wise, Wilson, Ford & Phillips* (by *Patrick J. Wilson*), for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J.*

*Caruso,* Solicitor General, and *Mark W. Matus,* Assistant Attorney General, for defendant.

Before: HOLBROOK, JR., P.J., and SAWYER and NEFF, JJ.

SAWYER, J. Defendant appeals from an order of the circuit court permanently enjoining it from seizing a liquor license for a bar and restaurant which was formerly owned by plaintiffs and transferred pursuant to an installment sale of the establishment. Defendant sought to attach the liquor license to collect tax liens against the transferee of the license, Qualey-Reid, Inc. Plaintiffs have retaken possession of the bar and restaurant and entered into an agreement to resell it to another party, including a transfer of the license. We affirm.

Plaintiffs sold the bar and restaurant known as the "Saw Mill," located in Traverse City, to Qualey-Reid in 1981. Plaintiffs financed a large portion of the sale price and retained a security interest in the furniture, fixtures, equipment, inventory, and accounts receivable. Plaintiffs perfected this security interest by filing a financing statement with the Secretary of State. The liquor license was not listed in the financing statement. Plaintiffs assert that the liquor license was not included in the security agreement or financing statement because of the restrictions imposed by the Liquor Control Commission's Rule 19, being 1979 AC, R 436.1119, subsection 3 of which prohibited a security agreement from including the license or alcoholic liquor.

Qualey-Reid neglected to pay state sales and withholding taxes and defendant filed tax liens against Qualey-Reid for the delinquent taxes. Meanwhile, Qualey-Reid also defaulted upon its

purchase agreement with plaintiffs and plaintiffs retook possession of the bar and restaurant on August 21, 1986. By agreement entered into on that date, Qualey-Reid agreed to return possession of the bar and restaurant to plaintiffs and cooperate in having the liquor license transferred to plaintiffs or their designee. Plaintiffs also agreed to sell the bar and restaurant and transfer the liquor license to a third party, pending, of course, approval by the Liquor Control Commission. Plaintiffs gave notice of their plans to defendant, which announced its intention to seize the liquor license and enforce its tax liens. In response, plaintiffs brought the instant action to enjoin defendant from interfering with the operation of the bar and restaurant and from seizing the liquor license or other assets of the bar and restaurant.

The question before us appears to be one of first impression, namely, whether defendant can place a tax lien on a liquor license. Defendant argues that a liquor license is a property interest subject to a tax lien, citing a number of federal cases. Plaintiffs respond that the trial court correctly concluded that, while there is a property interest in a liquor license for due process considerations, there is not a property interest such that a tax lien may be attached to a license. We do not believe that we must resolve this question, as the circumstances of this case allow us to conclude that defendant may not attach its tax lien to the liquor license involved.

As previously noted, the Liquor Control Commission's Rule 19 at the time of the sale by plaintiff to Qualey-Reid prohibited attachment of a security interest to a liquor license. This Court, however, has recognized that a licensee who sells his establishment and transfers his liquor license to the vendee may, as part of the transaction, enter into

a contract with the purchaser for a reassignment of the liquor license to the vendor in the event of a default on the installment sales contract. See *Bunn v Liquor Control Comm,* 125 Mich App 84, 92; 335 NW2d 913 (1983). This Court's decision did not, however, upset the rule that a security interest in the license cannot be granted. *Id.* Furthermore, it also noted that the transfer of the license would still be subject to approval by the Liquor Control Commission. *Id.* at 92-93.

In the case at bar, a major thrust of defendant's argument is that its tax lien should take priority over any interest by plaintiffs in a reassignment of the license to themselves since their security interest in the license was not listed in the security agreement or financing statement. Defendant dismisses plaintiffs' argument regarding Rule 19 by arguing that Rule 19 is invalid in light of the provisions of the Uniform Commercial Code which control the filing of financing statements. We believe that defendant's argument is disingenuous.

At the time plaintiffs sold their establishment and agreed to the transfer of their liquor license to Qualey-Reid, a rule promulgated by the Liquor Control Commission prohibited plaintiffs from taking a security interest in the license. Thus, it is entirely reasonable and expected that the liquor license would not be listed by plaintiffs in the security agreement or on the financing statement. Yet, the state now argues that plaintiffs' compliance with that rule should work to their detriment by allowing the state to have a higher priority claim against the license than do plaintiffs. Regardless of the validity of Rule 19, we do not believe that equity would permit defendant to now argue that Rule 19 is invalid and plaintiffs' compliance with that rule should work to their detriment.

Although defendant and the Liquor Control Commission are separate divisions of the state government, they are, nevertheless, both part of the executive branch of the government of the State of Michigan. As such, we believe that equity prohibits the government from, on the one hand, promulgating a rule and, on the other hand, denying the validity of that rule to the detriment of a person who complied with the rule. That is, the government is estopped from denying the validity of its own rule where to hold the rule invalid would work to the detriment of a private party. It makes no difference that it may have been a different department, division, bureau, or commission which promulgated the rule.

Indeed, the federal courts have recognized the existence of an equitable lien on behalf of a transferee of a liquor license where Rule 19 prohibited the transferee from taking a security interest. See *In the Matter of Gullifor,* 47 BR 450 (ED Mich, 1985). Turning to the case at bar, although the liquor license was not listed on the security agreement or financing statement, the security agreement and financing statement do make clear that plaintiffs intended to retain a security interest in all of the assets to the extent permitted by law. Additionally, plaintiffs have represented that the purchase agreement between themselves and Qualey-Reid provided for a reassignment of the liquor license in the event of default on the installment sales contract, though we have been unable to find a copy of that purchase agreement in the lower court record and cannot confirm this fact.[1]

In sum, we believe that, since a promulgated rule of the state provided that petitioners could not retain a security interest in the liquor license,

---

[1] In any event, we do not believe it is controlling whether the purchase agreement provided for a reassignment of the license.

the state cannot now seek to benefit from the fact that plaintiffs did not retain a security interest in that liquor license. That is, since the state prevented plaintiffs from taking a security interest in the liquor license, we hold that the state is now prevented from claiming a higher priority to the liquor license than plaintiffs where plaintiffs, in effect, repossessed the liquor license due to Qualey-Reid's default on the contract. Therefore, while our reasoning differs somewhat from the trial court's, we affirm the trial court's order permanently enjoining defendant from attaching its tax lien to the liquor license.[2]

With respect to defendant's argument that MCL 205.28; MSA 7.657(28) prohibits injunctive relief, we disagree. Although that statute does prohibit the issuance of an injunction to stay proceedings for the assessment and collection of a tax, it has been recognized that an injunction may nevertheless issue against the Department of Treasury where the taxpayer alleges that the department's actions are not "under" or "pursuant to" the tax statute because there is no basis for the department's action. See *Troy Industrial Catering Service, Inc v Dep't of Treasury,* 105 Mich App 86; 307 NW2d 345 (1981). Since, as discussed above, it was improper for defendant to seek to seize the liquor license, and no tax lien could attach to the license, we believe that the issuance of an injunc-

---

[2] We do note, however, that we specifically do not address the question whether a liquor license can be subject to a tax lien under the modified Rule 19 since a licensee is now permitted to pledge the license as security under a security agreement. That rule modification might well permit defendant to attach tax liens to liquor licenses after the effective date of that rule change, but we leave it to another panel to resolve that question should it arise. In any event, even should such a lien be permitted, we would think it would be inferior to the vendor's interest in "repossessing" a liquor license from a transfer which occurred under an installment sales contract executed while the prior version of Rule 19 was still in effect.

tion was appropriate to prevent harm to plaintiffs by defendant's unauthorized actions.

With respect to plaintiffs' argument that the issue on appeal is moot since the liquor license has been transferred to the subsequent purchaser, we need not decide that issue in light of our conclusion that no tax lien could attach to the license. We would point out, however, that it does not appear that the issue would be moot since, were we to reverse the trial court, it is feasible that the trial court could fashion some remedy.

For the above reasons, we conclude that, under the circumstances of this case, defendant could not attach a tax lien to the liquor license and seize that license and, therefore, the trial court properly enjoined defendant from doing so.

Affirmed. Plaintiffs may tax costs.